# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information Associated with
MARK.THOMASLAW@COMCAST.NET That Is in the
Possession of the Federal Bureau of Investigation

)
)
)  Case No. 2:20-mj-715
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 201(b) | Public Corruption |
| 18 U.S.C. 1956 and 1957 | Money Laundering |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jeffrey D. Rees, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 14, 2020

City and state: Columbus, Ohio

Kimberly A. Jolson
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) <br> INFORMATION ASSOCIATED WITH ) <br> MARK.THOMASLAW@COMCAST.NET ) <br> THAT IS IN THE POSSESSION OF THE ) <br> FEDERAL BUREAU OF INVESTIGATION ) <br> _____ ) | Case No. 2:20-mj-715 <br> Magistrate Judge Jolson <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Jeffrey D. Rees, having been sworn on oath depose and state the following:

**INTRODUCTION AND BACKGROUND**

1. I make this Affidavit in support of an application for a search warrant for information already obtained by the government, pursuant to a previous federal search warrant, from Comcast Communications LLC (Comcast) for Comcast email account **MARK.THOMASLAW@COMCAST.NET** (the SUBJECT ACCOUNT).

2. Beginning on or about April 13, 2018, an investigation was initiated by the Office of the Ohio Attorney General – Medicaid Fraud Unit regarding the theft of funds by Mark Thomas from A.L., for whom Thomas had served as Power of Attorney (POA). Beginning on or about January 23, 2019, a similar investigation was initiated by the Federal Bureau of Investigation through the United States Attorney's Office for the Southern District of Ohio.

3. These investigations uncovered evidence of federal crimes in relation to A.L. and led investigators to believe that there was probable cause to search for additional evidence of such crimes in the contents of the SUBJECT ACCOUNT.

4. Investigators applied for a federal search warrant for the SUBJECT ACCOUNT, and on June 3, 2020, U.S. Magistrate Judge Kimberly A. Jolson issued a search warrant requiring Comcast to disclose the contents of the SUBJECT ACCOUNT. The government subsequently acquired and searched those contents as authorized by the warrant.

5. During a review of information pursuant to the June 3, 2020 warrant, government agents discovered in plain view communications indicating possible public corruption by Thomas and others. In an abundance of caution, the government now seeks a warrant authorizing

October 14, 2020

an expanded search and seizure of information already obtained by the government in the SUBJECT ACCOUNT related to evidence of possible new crimes.

6. The items to be searched, as more fully detailed in Attachment A, are electronic messages sent or received by the SUBJECT ACCOUNT, and all other data, including address books, associated with this account for the time period from June 1, 2016, to December 31, 2019, all of which information the government currently has in its possession. Government-authorized persons seek to review that information to locate the items described in Attachment B.

7. I am a Special Agent of the Federal Bureau of Investigation (FBI). I have been a Special Agent for 22 years and I have been assigned to investigate public corruption matters for the past 21 years, which has included experience investigating such crimes as wire fraud and bank fraud. I possess a Master of Business Administration Degree from Ohio State University and I am licensed by the Accountancy Board of Ohio as a Certified Public Accountant (Inactive).

8. The information in this Affidavit is based on: personal observation and interviews; review of bank records; review of electronic mail messages (emails); statements made by Mark Alan Thomas to the Affiant and Ohio Attorney General's Office Medicaid Control Unit Special Agent Michele Treadway; and discussions with other FBI Special Agents and FBI Task Force Officers. In addition, there are numerous references in this Affidavit to, and citations of, email communications Thomas sent from the SUBJECT ACCOUNT. This Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. The Affiant has probable cause to believe that Thomas has misused his position as a Belmont County Commissioner to enrich himself through gifts or loans provided to him in exchange for his official actions, and that he has committed violations of, among other statutes, 18 U.S.C. § 201(b) (Public Corruption), and 18 U.S.C. §§ 1956 and 1957 (Money Laundering).

10. Based on the facts set forth in this Affidavit, your Affiant respectfully submits that there is probable cause to believe that the items to be searched contain evidence that Thomas committed the above offenses and/or conspired with others to commit the above offenses. Thomas used the SUBJECT ACCOUNT to communicate during the relevant times. When this Affidavit describes Thomas sending or receiving emails, he was using the SUBJECT ACCOUNT.

**PROBABLE CAUSE**

11. Thomas served as one of the three elected members of the Belmont County Board of Commissioners (BCBC) from 2013 to the end of 2018. In his official position as a Commissioner, Thomas voted on potential County expenditures and other issues which came before the Commission.

12. During his time on the BCBC, Thomas had a personal relationship with Michael Burgess, a Senior Vice President of Prime AE Group, Inc. (Prime AE), which is a firm that received contracts from the BCBC that Thomas voted to approve. Burgess, a Professional Engineer, joined Prime AE in June 2016 as Senior Vice President. Thomas appears to have received at least one personal loan from Burgess, and in their email correspondence, Thomas provided Burgess confidential inside information and expressed his support for Prime AE receiving contracts from the BCBC.

13. On or about December 7, 2016, the BCBC, including Thomas, voted unanimously to approve a contract with Prime AE for professional engineering services on an as-needed basis for the County's Sanitary Sewer District. The contract included two work orders. Work Order No. 1 was for the preparation of a Preliminary Engineering Report for the Water Treatment Plant, for which Prime AE would be paid a lump sum of $45,500. Work Order No. 2 was for General Engineering Services related to water and sewer rate escalation and related matters, for which Prime AE would be paid for time and materials not to exceed $35,000. On or about March 8, 2017, and on or about November 21, 2017, addendums to Prime AE's contract were approved by Thomas and the other two commissioners, which allowed for time and material payments not to exceed an additional $35,000 and $14,925.97, respectively.

14. On or about February 19, 2018, Thomas sent an email from the SUBJECT ACCOUNT to Burgess at "mburgess@primeeng.com," with the Subject: "THOMAS/BURGESS DRAFT 1 agreement." The text of the email was comprised of a document titled, "ASSIGNMENT OF REAL ESTATE AND PROMISSORY NOTE," which stated, in part, "In consideration of $150,000.00 being loaned by Michael A. Burgess, Thomas agrees to assign 35% of said real estate to Burgess until said loan is repaid." The document also included the statement, "Thomas agrees to repay Burgess $150,000.00 with no set repayment date or monthly payments and said loan shall be interest free." Burgess responded to Thomas on the same day and stated, "Looks good to me. can you attach a copy of the summary appraisal as well. / Thanks / Bud."

15. Bank records already acquired for Thomas and his related entities during this investigation do not extend to February 2018, and thus, the possible financial record of the loan

3

transaction has not yet been obtained. However, Thomas and Burgess' subsequent communications imply that a loan was made.

16. On or about April 24, 2018, Thomas responded to Burgess, stating in part, "Bud, as a follow up to this, and as you may know, I went to trial and was rightfully found not guilty. While that is a huge relief, it too came with a hefty legal bill[.] / Before I got [sic] to more conventional loan options, is there any more room for you to go $50K more until I get the Alpha resolved? … If you can do it, thank you, and if you cannot, I certainly understand as you have gone way beyond what I ever could ask[.]" Burgess responded on or about April 26, 2018, "Mark, slight problem…AECOM will only let me transfer funds once a quarter…next time I can do it is in July."

17. On or about July 11, 2018, Thomas replied to Burgess in part, "While my Alpha negotiations are still on-going and going well, if you can help me thru the end of year or so, I would appreciate it very much. / I could use anywhere from a minimum of $50K to a maximum of $100K to help pay these legal bills[.] / If you cannot, I too understand and there will be no issues of course. Let me know when you can please and thanks again for all the help! MT." Burgess responded on the same day, "In mtgs today, will be able to evaluate what I can do Friday morning and can get back to you then[.] / Bud."

18. Thomas' next response in this email chain was on or about October 10, 2018, and he stated in part, "Are you around later today or Thursday to talk about the money you loaned to me?"

19. On or about July 17, 2018, just six days after his request for additional loan funds, Thomas sent an email to Burgess from the SUBJECT ACCOUNT with the subject: "BELMONT COUNTY SSD-WATER SYSTEM IMPROVEMENTS." Thomas wrote in part, "I wanted to give you a private email to give you an update as to what happened Monday[.] … Kelly [presumed to be Sanitary Sewer Director Kelly Porter] and Mark met with us on various issues and he brought you guys up. He and Mark still have a bad taste in their mouth with regard to feeling overcharged for some of the completed work. / In addition, they are not happy with the fact that the Byesville plant pilot study project went south. While I did not discuss all the work you did without charging or as part of the whole master plan, we need to figure out how to work thru this with Prime[.] / They have NOT dismissed the idea of using Prime going forward but they told us they want to consider going thru RFQ [Request For Quote] interview process again… / I reminded them that Prime has the most experience and knowledge of the system and we cannot discount that at all… / You know you have my support and I will continue to sell Prime."

20. Burgess responded to Thomas on or about July 19, 2018, stating in part, "Yep, it's disappointing, the Commissioners need to be careful that Kelly doesn't lead you down a path that will be detrimental to the County… we have never had a failed project." Thomas

4

replied on the same day, stating in part, "You know I am working on it. Mike AND you guys are still on board. Give me some time to 'work it.' / Artesian is OUT for now[.] / I think you need to personally reach out to Kelly and see if you can make inroads. … / Off the record[.]"

21. The work performed by Prime AE for Belmont County in 2017 and 2018 was primarily intended to assist in the County's efforts to obtain financial assistance from the U.S. Department of Agriculture (USDA) Rural Development Water and Waste Disposal Loan and Grant Program. In or around October 2017, Belmont County was awarded approximately $12,000,000 by USDA for upgrades to their sewer systems. Thomas, as then-BCBC President, signed as the Applicant on the Certification Approval which accompanied the Request for Obligation of Funds form. In or around August 2018, approximately $60,000,000 was awarded for upgrade of the Belmont County water system. Belmont County has not yet issued contracts for the work to upgrade their sewer and water systems.

22. Burgess and Thomas have remained in email contact through the SUBJECT ACCOUNT through at least December 2019.

## CONCLUSION

23. Based on the foregoing, I request that the Court issue the proposed search warrant. Because the records to be searched are already in the government's possession and the search may be conducted at a time convenient to government agents, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

_____
Jeffrey D. Rees
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me, on this __14th__ day of October, 2020.

_____
Kimberly A. Jolson
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to the electronically stored data, information, and communications contained in, related to, and associated with, including all preserved data associated with Comcast Communications LLC account **MARK.THOMASLAW@COMCAST.NET**, as well as all other subscriber and log records associated with the account, for the time period from June 1, 2016, to December 31, 2019, all of which information is currently located with the Federal Bureau of Investigation.

## ATTACHMENT B

### Particular Things to Be Seized

All information that constitutes evidence of violations of 18 U.S.C. § 201(b) (Public Corruption), and 18 U.S.C. §§ 1956 and 1957 (Money Laundering), those violations involving Mark A. Thomas and occurring on or after June 1, 2016, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Public Corruption;

(b) Money Laundering;

(c) Bribery;

(d) Extortion;

(e) Prime AE Group, Inc. or Michael Burgess;

(f) Financial agreements or transactions between Thomas and any individual or entity doing business with Belmont County, including Prime AE Group, Inc. or Michael Burgess;

(g) The USDA Rural Development Water and Waste Disposal Loan and Grant Program and any grants provided pursuant to it to Belmont County;

(h) Actions taken or communications made by Thomas in his official capacity as a Belmont County Commissioner;

(i) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(j) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(k) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).